NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1874
_____

ELVIS SOTO-MUNIZ,
                                        Appellant

v.

ALLAN MARTIN; JOHN DOES # 1-5, (said names being fictitious, as the true
names are presently unknown), individually and in their official capacities;
CORIZON, INC., f/k/a Correctional Medical Services, Inc.; DAVID MEEKER;
DR. LIONEL ANICETTE; YASSER SOLIMAN
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-10-cv-03617)
District Judge: Honorable Robert B. Kugler
_____

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2016

Before: AMBRO, CHAGARES, and FUENTES, Circuit Judges

(Opinion filed: December 8, 2016)
_____

OPINION[*]
_____

AMBRO, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Appellant Elvis Soto-Muniz seeks review of the District Court's grant of summary judgment in favor of Dr. Allan Martin. Soto-Muniz brought a § 1983 suit alleging that prison physician Dr. Martin was deliberately indifferent to his medical needs in violation of the Eighth Amendment. We agree with the District Court that there is no evidence that Dr. Martin acted with deliberate indifference; at most there is a dispute over the adequacy of the medical treatment. Because mere medical negligence is not an Eighth Amendment violation, we affirm.

## I.      Background

Soto-Muniz suffers from chronic ulcerative colitis, an inflammatory bowel disease, which he managed through medication and occasional medical treatment. In July 2008 he began a prison term at New Jersey's Central Reception and Assignment Facility. During the week Soto-Muniz awaited assignment he was seen three times by the Assignment Facility's medical staff. He informed the staff about his medical condition and treatment history.

By July 17, 2008, Soto-Muniz was transferred to South Woods State Prison. He met with the prison's nurses and informed them of his medical condition. The next day, Dr. Martin conducted a gastrointestinal examination of Soto-Muniz, which revealed some tenderness in his abdomen but otherwise normal results. He prescribed anti-inflammatory medicine and pain killers. Dr. Martin also told Soto-Muniz to continue oral hydration because his veins could not handle i.v. hydration due to heroin use.

Soto-Muniz remained at the infirmary for the next three days, and medical staff saw him each day. On the third day, Dr. Martin reexamined Soto-Muniz and released

2

him into the prison's general population with orders to continue the course of treatment and to report any symptoms. Dr. Martin also ordered lab testing and requested a gastrointestinal consult. Just two days later, prison officials approved the request, scheduling the GI consult for August 13.

After his release to the general population, Soto-Muniz's condition worsened. On July 25, he complained to a nurse of nausea, bloody stools, poor appetite and weakness, but denied any vomiting or diarrhea. The nurse reminded him of the need to hydrate and to continue his medical treatment.

On August 1, Soto-Muniz again went to a nurse and complained of nausea, abdominal pain, bloody stools, loss of appetite, and weight loss, though he again denied any vomiting or diarrhea. He had also lost six pounds. The nurse sent Soto-Muniz to the infirmary, where Dr. Martin examined him. Dr. Martin observed that Soto-Muniz appeared chronically ill but did not find any acute symptoms. He assessed that Soto-Muniz's weight was stable, his blood pressure was fine, and nothing warranted a further stay in the infirmary.

A few days later, Soto-Muniz returned to sick call. He repeated his complaints of, among other things, fatigue and weight loss, but once again denied other symptoms. The nurse observed that he was still suffering from diarrhea and had lost three more pounds, and she ordered an increased fluid intake and a bunk on the bottom floor. The next day, Dr. Martin sent Soto-Muniz to St. Francis Medical Center for follow up treatment. Shortly after he arrived at St. Francis, Soto-Muniz had surgery to remove his colon. A few months later he underwent a second surgery to remove his rectum.

3

Soto-Muniz brought a § 1983 claim alleging that prison staff were deliberately indifferent to his medical needs. The District Court granted summary judgment in favor of the defendants. Soto-Muniz appeals only as to Dr. Martin.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the grant of summary judgment by the District Court. *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015). We will affirm only if, after drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

## III. Analysis

To establish an Eighth Amendment violation, Soto-Muniz must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference is more than an "inadvertent failure to provide adequate medical care." *Id*. at 105. Instead, it requires "obduracy and wantonness . . .[,] which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted). Furthermore, it is well established that disagreements over medical judgment do not amount to an Eighth Amendment claim. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). Courts defer to prison doctors' professional judgment, which will be presumed valid "unless it is such a substantial

4

departure from professional judgment, practice or standards as to demonstrate that the doctor did not base the decision on such a judgment." *Id.* at 113.

In support of his claim, Soto-Muniz relies solely on expert evidence that is critical of Dr. Martin's course of treatment. This expert evidence at most raises an issue of fact as to whether Dr. Martin may have been negligent. It is not evidence that he consciously disregarded a serious risk.

Soto-Muniz's expert first contended that Soto-Muniz should have been receiving i.v. hydration and i.v. steroids, and that although an i.v. could not be administered in the prison's infirmary because of Soto-Muniz's history of heroin use, he should have been transferred to a different facility that could have implanted a catheter for hydration. Dr. Martin believed that oral hydration was working and that Soto-Muniz's condition was stable. This disagreement in medical judgment does not establish deliberate indifference.

Soto-Muniz also argues that we can infer deliberate indifference because of the delay in his receiving a gastrointestinal consult. The evidence demonstrates the opposite, however. Dr. Martin ordered lab testing and also requested a GI consult just three days after initially examining Soto-Muniz. This request was approved by prison staff two days later, although the consult was not scheduled for some three weeks later. Once Dr. Martin made the request, it was the responsibility of other administrative officials to approve and schedule the consult. Any delay in scheduling was due to prison officials, which is not evidence that Dr. Martin was deliberately indifferent to Soto-Muniz's medical needs.

\*     \*     \*     \*     \*

5

Soto-Muniz suffered, and continues to suffer, greatly. No doubt hindsight called for different treatment than what he received. But hindsight is not the perspective used; it is what Dr. Martin knew at the time he observed Soto-Muniz. We have evidence only of a disagreement between medical professionals, and mere disagreements of professional opinion do not amount to deliberate indifference. Accordingly, we must affirm the judgment of the District Court that no Eighth Amendment violation occurred.